296          SUPREME COURT OF UTAH.          [March

McCornick & Co. v. Natl. Copper Bk. of Salt Lake City, 49 Utah 296.

## McCORNICK & CO., BANKERS, v. NATIONAL COPPER BANK OF SALT LAKE CITY et al.

No. 2969.   Decided March 8, 1917.   (163 Pac. 1097.)

1. PRINCIPAL AND AGENT—DECEPTION BY AGENT—PRINCIPAL'S RIGHT OF RECOVERY WITHOUT DISAFFIRMANCE OF WHOLE TRANSACTION. Where an agent has deceived his principal in a transaction made for him with a third person, the principal need not disaffirm the whole transaction to hold the agent liable; the doctrine that one cannot retain what is beneficial and reject the rest not being applicable.[1]   (Page 302.)

2. APPEAL AND ERROR—RIGHT TO ALLEGE ERROR—CROSS-APPEALS—COPARTIES. Coparties desiring relief against each other on appeal must present their matters by cross-appeals.[2]   (Page 306.)

3. APPEAL AND ERROR—RELIEF AGAINST ONE NOT A PARTY TO APPEAL. One codefendant may not by merely filing cross-errors assail the judgment in favor of plaintiff upon his codefendant's appeal.   (Page 306.)

Appeal from District Court, Third District; *Hon. Geo. G. Armstrong,* Judge.

Action by McCornick & Co., Bankers, against the National Copper Bank of Salt Lake City, in which Hanna D. Bowring and another and Harold C. Best filed answers and cross-complaints and the United Home Builders Company filed answers and cross-complaints against the Bowrings and Best; E. B. Wicks being made a party defendant during trial.

Judgment for plaintiff and for United Home Builders Company and Best on their cross-complaints.

From judgment on cross-complaints, Bowrings and Best appeal, Wicks assigning cross-errors.

MODIFIED AND AFFIRMED and remanded, with directions.

*Stewart, Steward & Alexander* for appellants.

[1] *Neighbor* v. *Realty Association*, 40 Utah 614, 124 Pac. 523, Ann. Cas. 1914D, 1200.

[2] *Railroad* v. *Board of Education*, 35 Utah 13, 99 Pac. 265.

*W. I. Snyder* and *Dan B. Shields* for respondents.

FRICK, C. J.

In view of the great length of the pleadings in this case, covering, as they do 58 pages of the printed abstract, we shall not attempt to set them forth, not even in condensed form. We shall, however, attempt to state the facts so as to make clear the points decided.

The case, as originally commenced, was an action at law and was commenced by the plaintiff, McCornick & Co., Bankers, against the National Copper Bank of Salt Lake City to recover judgment upon an indorsement of a certain check, which indorsement was guaranteed by the National Copper Bank of Salt Lake City, and which McCornick & Co., Bankers, claimed was a forged indorsement. The other defendants were brought into the case after it was pending.

The United Home Builders Company, a corporation, hereinafter called company, filed an answer and cross-complaint in which it sought equitable relief against its co-defendants, the Bowrings and Best. The Bowrings and Best also filed answers and cross-complaints in which they set forth purely equitable matters, that is, the Bowrings alleged that they were induced to sign certain papers, including the indorsement on the check in question, by misrepresentation and fraud practiced by one L. B. Call, who was a representative of said company; and Best alleged that said company, through said Call, had, through fraud and misrepresentation, obtained certain moneys from him and was withholding the same.

The Bowrings and Best alone appeal. The questions involved on this appeal arise entirely out of the matters set forth in the equitable cross-complaints aforesaid. The two banks between whom the action originated have no interest in this appeal and will not be further mentioned, except in connection with some of the transactions which are set forth in the cross-complaints and are involved on this appeal.

There is really not much controversy concerning the facts which arise upon the cross-complaints and which must control this appeal. Briefly stated, the facts are: That in the latter part of April, 1915, the appellant Best was the owner

of a certain dwelling situated in the southeastern part of Salt Lake City which he was desirous of selling or exchanging for less valuable property. To accomplish his purpose he listed the dwelling with the defendant company, which was engaged in the real estate business in Salt Lake City. There was a mortgage on Best's dwelling of $3,500 which would have to be assumed by the purchaser, or, if exchanged, by the person with whom the exchange was made. Best valued his dwelling at $6,500, and he thus had an equity in it of $3,000. At the time of the transactions involved here one L. B. Call was an employee of the company, and he undertook to dispose of Best's dwelling, as before stated. It seems that Call was acquainted with the Bowrings, and he called on Mr. Bowring at his place of business and informed him of the Best dwelling and of Best's desire to dispose of it. The Bowrings had a dwelling in the westerly part of Salt Lake City which they valued at $3,000, and Call suggested to them that they exchange their dwelling for Best's and assume the $3,500 mortgage. This would make an even exchange of the properties, that is, the $3,000 at which the Bowrings valued their dwelling would offset the $3,000 equity Best had in his. The evidence is undisputed that the Bowrings and Best never met to discuss the terms of the exchange. Call conducted all of the negotiations, and in doing so he would communicate with the Bowrings and then with Best, and in that way would inform each of the parties what the other had said and desired. In handling the matter in that way the misunderstandings which culminated in this lawsuit arose as follows: Best had informed Call, so Call says, that the former did not have the money to pay Call but a small commission if the exchange were made, but that Best would "make it up" to Call in some other way or "on some other deal." If the exchange of the properties were made as before suggested—that is, if the Bowrings would exchange their $3,000 dwelling for the $3,000 equity Best had in his—there would be no money in the transaction out of which Call could take his commission. Call therefore conceived the idea to raise some money on the Bowring property, which he did as follows: Call informed Best that there was a $1,000 mortgage on the Bow-

ring dwelling, and that Best would have to take a deed sub-
ject to that mortgage, the same as the Bowrings took a deed
to Best's dwelling subject to the $3,500 mortgage.  In view
of the fact that Best supposed there was a $1,000 mortgage
on the Bowring dwelling, he assumed that the exchange
could not be made by merely exchanging deeds, but could
only be made by Bowrings paying him the amount he de-
manded.   After considering the matter Best informed Call
that if the deal were made the Bowrings would have to pay
him $750 so as to reduce the $1,000 mortgage to that extent.
Call informed Best that the deal could not be consummated
in that way, and that the best the Bowrings would do would
be to pay Best $500 and exchange deeds.  Best, being very
desirous of closing the deal, and also being in need of some
ready cash, finally agreed to make the deal if the Bowrings
would pay him the $500 in cash.  Immediately after Best
had agreed to that Call went to a Mr. Wicks, a money broker,
and obtained a $1,000 loan on the Bowring dwelling.  He
then induced Best to execute a deed to his dwelling to the
Bowrings subject to the $3,500 mortgage, and at the same
time induced the Bowrings to execute a deed to their prop-
erty to Best in which Call inserted the clause that it was
subject to a $1,000 mortgage.  When the Bowrings saw the
deed, however, they insisted that their property was free
from incumbrances and Call then explained to them that the
$1,000 was obtained for Best, and that in view that Best had
to leave the city he wanted the Bowrings to execute a note and
mortgage for the $1,000 to Wicks and make their deed subject
to that mortgage.  The Bowrings, believing Call's statements,
executed the $1,000 note and mortgage to Wicks and delivered
both to Call.  Call then delivered the same to Wicks and
obtained a check from him for the loan amounting to $970.30,
that being the amount of the loan less "commission and ex-
penses," as Call puts it.  The check was drawn on McCornick
& Co., Bankers, and was made payable to Mrs. Bowring in
view that the title to the Bowring property was in her name
and that she and her husband had executed the mortgage.
aforesaid.  Call took the check to Mrs. Bowring to have her
indorse the same.  She demurred, and Call explained to her

that she had no interest in the check, that the money belonged to Best, and that the note and mortgage were made in the way they were merely as a matter of convenience to Best for the reason that he was obliged to leave the city. Mrs. Bowring still refused to indorse the check, however, so Call went to see her husband, to whom he told the same story he had told Mrs. Bowring. Bowring conceded that neither he nor his wife had any interest in the check, and that the money represented by it belonged to Best, so he wrote his wife's name on the back of the check. Call then presented the check to the company, which presented the same to the defendant, the National Copper Bank of Salt Lake City, and said bank paid it, and, as hereinbefore stated, guaranteed the indorsement thereof. When the check was presented to McCornick & Co., Bankers, on whom it was drawn, it was paid. A few days thereafter, however, Mrs. Bowring convinced McCornick & Co., Bankers, that her indorsement was unauthorized and that the check had been paid without proper authority. Mr. Wicks then demanded that McCornick & Co., Bankers, credit him with the amount of the check, which was done. Upon the question of whether the indorsement of the check was authorized by Mrs. Bowring the court found the facts against her contention, and found that she had in fact authorized the indorsement thereon. In view that the two banks have settled their differences respecting the check, that phase of the case is immaterial, except so far as it affects Mr. Wicks; and his claims will be referred to hereinafter. After the company had obtained the money on Wicks' check it deposited $462 of the $970.30 to Mr. Best's credit in a certain bank, and the company retained the rest. Some time afterward Mr. Best learned that he had only been paid $462 of the $500 Call had promised that Bowring would pay him. Best then called up Bowring and asked him why he did not pay Best the full $500 as he had agreed to do. Bowring informed Best that he had never agreed to pay Best $500 or any other sum. Best and Bowring, upon making inquiries, then for the first time learned how Call had induced them to agree to what he wanted, and that he had planned the transactions so as to get about one-half of the loan placed on the

Bowring dwelling as and for a commission for the company by which he was employed, but in doing so had carefully concealed his real purpose from both Bowring and Best. After the Bowrings and Best were made parties to this action they set forth the facts with respect to the transactions and alleged that they had been deceived and defrauded, as hereinbefore stated. The Bowrings asked that the note and mortgage be canceled, or that Mrs. Bowring be paid by the company the amount of the loan in excess of the $500, which was to be paid to Best, and Best asked that the whole amount of the loan be paid to him, since the same constituted a lien on his property. When the real facts were ascertained the Bowrings had taken possession of Best's dwelling and he had taken possession of Bowring's property, and both parties have remained in possession of the respective properties and have enjoyed the fruits of the transactions to that extent.

After a somewhat protracted hearing the court found against the contentions of the Bowrings. The court, however, found that the company was owing Best, out of the moneys obtained from the loan as aforesaid, the sum of $291.30, with interest, and judgment was entered in his favor for $328.74, including interest. The court also found that the Bowrings were not injured or defrauded in any way, although they had been deceived, and disallowed their claims. The court also required the company to make and deliver to the Bowrings "a good and sufficient bond protecting them, and each of them, against any personal judgment to be at any time rendered upon the foreclosure of said mortgage for $1,000."

The Bowrings and Best alone appeal from the judgment, and they assail many, if not all, of the court's findings of fact as well as some of the conclusions of law and the judgment.

During the trial Wicks was also made a party defendant, and he assigns cross-errors, which will be referred to later.

The company is the only party that opposes the appeal, and its counsel, with much vigor, contend that there is no merit in appellants' assignments of error. As we view the matter, the case really presents no great difficulty. While we fully agree with the trial court that, although the Bowrings,

302          SUPREME COURT OF UTAH.          [March

McCornick & Co. v. Natl. Copper Bk. of Salt Lake City, 49 Utah 296.

through Call's deception, were induced to do certain things, yet they in no way were injured or prejudiced by what they did. The contention made by their counsel that the check for $970.30 representing the loan, and which was made payable to Mrs. Bowring, was and is her property, and that she was and is entitled to the proceeds thereof, or at least the amount in excess of what Call had promised to pay Best, is, under the undisputed facts, manifestly untenable. The Bowrings always understood that the loan was made for the benefit of Best, and that they were parties to the transaction only because the title to the Bowring place, which then had been exchanged for the Best dwelling, was still in Mrs. Bowring when the loan was made. They knew, or ought to have known, that they had no beneficial interest in the check, and that Mrs. Bowring merely held the naked legal title thereto in trust for the real beneficiary. In equity Mrs. Bowring could have been compelled to indorse the check so that the beneficiary might enjoy the benefits of his own property or money. The Bowrings obtained precisely what they agreed to receive and were in no way injured by the transaction.

Counsel for the company insist that such is precisely the case so far as Best is concerned. We cannot take that view of the matter. Best testified that he never would have agreed to take $500 if he had been informed or if he had known that the $1,000 loan was then being made upon his property which he had just received from the Bowrings. No one has disputed his testimony in that regard, and we do not see how it well could have been or be disputed. Best needed some ready money, and that is what induced him to accept only $500 to reduce the mortgage which he was informed was on the Bowring property. Is any one simpleminded enough to believe that Best would have consented to mortgage his own property for $1,000 for the sake of getting $500 when he could just as well have obtained the full amount of the loan? Is it not equally clear that Call obtained the loan surreptitiously for the sole purpose of obtaining an undue advantage over Best, and for the purpose of obtaining a commission which Call well knew Best would not allow him in view of the understanding that he had with Best when

Best listed his property with the company for sale or exchange? Moreover, Best was tricked into consenting to accept the $500, and for that reason is not bound. Best was, therefore, not only deceived by Call, but he was actually injured by the transaction. Counsel for the company, however, argue that, inasmuch as Best and the Bowrings are actually enjoying the fruits of the transaction—that is, the exchange of the dwellings— they are estopped from disaffirming any part of the deal. They, counsel contend, must accept all or nothing. We need not stop now, however, to further consider the Bowrings. They are out of the case. So far as Best is concerned, the contention of counsel is based upon the familiar doctrine that, where one is dissatisfied with a transaction, he cannot retain that which is beneficial to him and reject the rest. The doctrine has no application here. Call was the agent of Best in disposing of his dwelling. Call was required to deal with Best openly, fairly and honestly and with strict fidelity. *Neighbor* v. *Realty Association,* 40 Utah 614, 124 Pac. 523, Ann. Cas. 1914D, 1200. The relation between Best and Call was that of principal and agent. If, therefore, the agent has deceived his principal and has obtained an undue advantage over him, does it lie in the agent's mouth to say that he cannot be made to account for what he manifestly obtained by deception and fraud from his principal until and unless the principal disaffirms the whole transaction made with a third party and in which he was deceived? The mere statement of the proposition also answers it. Call was not a party to the transaction in the sense that he can invoke the doctrine. He was merely the instrument through whom the real arties acted, and not the party in interest. If counsel's contention should prevail, then no principal could require his agent to account unless the principal first paid the agent what he demanded or unless the principal disaffirmed all that he had, through the agent's deception, been induced to agree to with a third party. Such, fortunately, is not the law. Best may therefore call upon the company to account to him for whatever money or property it received through Call and which the latter illegally obtained from Best. The company

now stands in Call's shoes.  The only question is: What, under all the circumstances of this case, is that amount?

As we have seen, the company obtained $970.30 upon the note and mortgage, the whole of which sum, both in law and equity, always belonged to Best.  It is his property that is pledged to secure the payment of Wicks' mortgage.  Best has, however, received and retained $462 of the amount of the loan.  The balance of $508.30 is thus due him, all of which, the undisputed facts show, the company received.  The court in its findings and judgment required the company to account for all of that sum except the sum of $225 which the court (including a few small items for costs) allowed the company as a commission.  We remark that nothing is contained in the pleadings about a commission, except that in the company's cross-complaint it is alleged that it was understood between the Bowrings and Call that the amount obtained from Wicks upon the loan in excess of $500, which was to be paid to Best, should be retained by Call or the company.  In the prayer of the cross-complaint, however, the company only prays for general relief, and the proof is that Best did not agree that Call or the company might retain said amount, or any amount, as a commission.  Indeed, Call himself admitted that Best never agreed to pay any stated sum as a commission.  The only competent evidence in the record respecting commission was produced by Best himself.  It seems that upon that evidence the court allowed the company the sum of $225 as a commission for Call's services in bringing about the exchange of the two properties.  As a matter of course Call had no claim for any other services, since he was not employed or authorized to render any other.  Best, however, produced competent evidence that a fair and reasonable commission under all the circumstances was the sum of $150.  We, too, think that $150 is a fair commission, notwithstanding the company's claim that it should retain the full amount of the loan, except the $500 to be paid to Best.  If that were allowed, then the commission would be approximately sixteen per cent. of the whole amount involved in the deal.  To illustrate: Suppose the Bowrings had sold their dwelling for $3,000, its alleged value, and had paid Best that sum for his

equity, the $3,000 would then have been the extent of the deal. It is no different because the Bowrings paid Best by deeding their dwelling rather than with the proceeds they might have derived therefrom. It might just as well be contended that, if A. purchases a $4,000 property from B., and pays him that amount, therefore the amount in the deal actually represents both the value of the property and the amount of money paid, and that the amount of commission should depend upon both. That such is not the rule is made clear by the testimony of the real estate broker who testified on behalf of Best respecting what would be a fair commission upon the transaction brought about by Call. The broker placed the commission at $150, or at 5 per cent. of the value of the Best property. In view of the issues Best thus produced the only competent evidence of what would be a fair and reasonable compensation for Call's services. The court, however, found that $225 was a reasonable commission and allowed that amount. The finding, however, is not supported by any competent evidence. Neither is it supported by the inherent equities of the case. The court, therefore, should have deducted the sum of $150 as a commission from the $508.30 in the hands of the company, and not the sum of $225, as was done. There should therefore be added to the amount allowed Best, and for which judgment was awarded him, $75, which is the difference between $225 and $150. This would make the amount for which Best is entitled to judgment against the company $366.30, with interest on that sum from the date as in the present judgment in favor of Best. Best thus receives all of his money, except the $150 commission and the small items of expense.

In order to avoid misconception, we desire to state that we have allowed the $150 commission to the company in this case for the reason that Best has in effect offered that sum as and for a commission. We do not pass upon the question of whether, under all the circumstances, the company would or would not be entitled to demand a commission in view of Call's conduct. That question, in view that Best practically conceded that $150 was a fair and reasonable commission, is not involved here, and hence is not decided.

Vol. 49—25

This disposes of the appeal on the part of both the Bowrings and Best. As before stated, Wicks was also made a party to the action and he appeared and filed **2, 3** an answer. He, however, claimed no affirmative relief. Notwithstanding that, he assigns cross-errors and insists that the court erred in awarding interest to McCornick & Co., Bankers. It will be observed that Wicks has not assigned any cross-errors as against the appeal of either the Bowrings or Best. He makes no claim as against them or either of them. His assignments are directed against the judgment awarded McCornick & Co., Bankers, and against the findings upon which that judgment rests. We are powerless to give any relief upon the cross-errors assigned. The only relief we could grant upon the cross-errors assigned would be as against the appeal of the Bowrings and Best. If Wicks desired to assail the findings and judgment in favor of McCornick & Co., Bankers, plaintiff in the action, he should have taken a cross-appeal, or an independent appeal. One co-defendant may not, by merely filing cross-errors, assail the judgment in favor of the plaintiff upon his co-defendant's appeal. In this case Wicks is not assailing appellants' judgment, but what he is seeking to do is to modify the judgment in favor of McCornick & Co., Bankers, who is not appealing. The cross-errors assigned by Wicks are therefore impotent to reach that judgment. That he may not do that is settled in the case of *Railroad* v. *Board of Education*, 35 Utah 13, 99 Pac. 265, and the cases there cited. The cross-errors assigned by Wicks are therefore unavailing. Wicks could have assigned cross-errors in support of the judgment, or he could, by making the proper cross-errors, have obtained relief, perhaps, against the appellants, but he may not do that as against a judgment in favor of the plaintiff from which he has not appealed.

The findings of the court, conclusions of law and judgment are therefore modified to the extent herein stated, and as to all other matters not so modified the findings, conclusions of law and judgment are affirmed. The case is therefore remanded to the district court of Salt Lake county, with directions to modify the findings of fact, conclusions of law and judgment as against the company and in favor of Best, as

herein indicated, and as to all other matters, and as to all other parties, to permit the findings of fact, conclusions of law and judgment as made and entered, to stand. It is further ordered that Best recover costs on his appeal against the company, and that the Bowrings, Wicks, and the company pay the costs incurred by each.

McCARTY and CORFMAN, J. J., concur.