## UTAH ASS'N OF CREDIT MEN v. BOARD OF EDUCATION OF MILLARD COUNTY SCHOOL DIST.

No. 3308.    Decided March 24, 1919.    (179 Pac. 975.)

1. SCHOOLS AND SCHOOL DISTRICTS—LIABILITIES OF DISTRICT—MIS-APPLICATION OF FUNDS. Comp. Laws 1907, section 1815, as amended by Laws 1909, c. 44, provides that school districts may annually levy a one per cent. tax "for the support of schools, to defray current expenses." Comp. Laws 1907, sections 1871, 1882, et seq., provides that, when authorized by the electors, the school board may levy special taxes for school sites, building schoolhouses, etc. *Held*, a county school district succeeding a former country district under laws 1915, c. 78, and Comp. Laws 1907, section 1891x22, which latter district had illegally applied the taxes levied for current expenses to the construction of a schoolhouse, is liable for such current expenses; Const. art. 14, section 3, prohibiting expenditures beyond tax levy, not applying. (Page 138.)

2. APPEAL AND ERROR—CROSS-ERRORS—ATTACKING JUDGMENT AGAINST DEFENDANT—CROSS-APPEALS. Appellee cannot assail a judgment entered for appellant for part of its claim against it by mere cross-assignments of error; the proper procedure being to file a cross-appeal from the judgment.[1] (Page 143.)

Appeal from the District Court of Salt Lake County, Third District; *Hon. Wm. H. Bramel,* Judge.

Action by the Utah Association of Credit Men against the Board of Education of Millard County School District.

From judgment for partial relief only, plaintiff appeals.

REVERSED and REMANDED with directions.

*T. O. Sheckell* of Salt Lake City, for appellant.

*J. A. Melville* of Salt Lake City, for respondent.

---

[1] *McCornick & Co.* v. *National Copper Bank,* 49 Utah; 296, 163 Pac. 1097, and *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff,* 49 Utah, 569, 164 Pac. 856.

136          SUPREME COURT OF UTAH          [March

Utah Ass'n of C. M. v. Bd. of Ed., of Millard Co., etc., 54 Utah 135.

GIDEON, J.

Plaintiff (appellant), as assignee, brings this action against the defendant board of education on claims contracted with the Central school district No. 5, hereinafter referred to, during the years 1913 and 1914. The first cause of action alleges a sale by the McMillen Paper & School Supply Company, assignor of the plaintiff, of school supplies to said Central school district No. 5 between August 1, 1913, and March 31, 1914, and within the fiscal year beginning July 1, 1913, and ending June 30, 1914, in the sum of $1,930.05. The second cause of action is based upon a claim assigned to the plaintiff by the Deseret News Book Store for school supplies sold to the said Central school district No. 5 during the years 1914 and 1915 in the sum of $576.95. It is also alleged that the goods, consisting of textbooks, school supplies, chalk, etc., were essential and necessary for the work of the public school in that district, and that without such supplies said district could not have conducted its school during those years, and that the trustees thereof were authorized and empowered to purchase such supplies for such purpose.

The answer denies any knowledge of the correctness of the plaintiff's claims, denies defendant's liability, and, as a further defense to each of the causes of action, alleges that the indebtedness upon which the action is based was in excess of the revenues for the Central School District No. 5 for the current year in which such goods were purchased, and is therefore void, and hence unenforceable. It is also alleged that the defendant board of education of Millard county school district does not now have, and that neither it nor the members thereof ever had at any time, any moneys or revenues of any kind that can or could be lawfully applied in payment of the plaintiff's claims, and that said defendant at no time received any revenues, taxes, or money from the said Central school district No. 5 for the purpose of paying plaintiff's claims or for any other purpose whatever.

In its reply plaintiff denied any knowledge sufficient to answer the allegations that the indebtedness was in excess of the

revenues of the school district for the year during which the same was contracted, and again alleged that the goods sold were necessary, etc.

The case was heard before the court without a jury, and in its findings of fact the court found that the allegations of the complaint as to the sale and delivery of the goods in the amounts claimed to the Central school district No. 5 were true; that of the amount sold by the McMillen Paper & School Supply Company $1,012.41 was contracted to the district prior to November 25, 1913; and that a part, to wit, $945.87, was contracted subsequent to that date and during the school year ending June 30, 1914. The court further found that as to the merchandise mentioned in the second cause of action $28.91 of that amount was contracted during the school year ending June 30, 1914, and after November 25, 1913; that the balance, namely, $547.96, was contracted during the school year beginning July 1, 1914, and ending June 30, 1915. The court found that the Central school district No. 5, on and prior to November 25, 1913, contracted obligations in excess of the amount of its revenues for the fiscal year ending June 30, 1914, and concluded, as matter of law, that all debts contracted thereafter during that fiscal year were without authority of said Central school district No. 5 as being prohibited by the provisions of the Constitution and the statutes of this state. Judgment was entered accordingly. From the refusal of the court to give plaintiff judgment for the full amount of its claims this appeal is prosecuted.

Section 3 of article 14 of the Constitution, being the provision of the Constitution in question, reads as follows:

"No debt in excess of the taxes for the current year shall be created by any county or subdivision thereof, or by any school district therein or by any city, town or village, or any subdivision thereof in this state; unless the proposition to create such debt, shall have been submitted to a vote of such qualified electors as shall have paid a property tax therein, in the year preceding such election, and a majority of those voting thereon shall have voted in favor of incurring such debt."

The Central school district No. 5 was a country school district situate in Millard county, Utah, and had the usual

powers and authority vested in such districts by Comp. Laws 1907 and statutes amendatory thereof.

On July 1, 1915, by virtue of the provisions of chapter 78, Laws Utah 1915, such Central school district No. 5 was merged into and became a part of Millard county school district. The provisions of that chapter, so far as material here, are that each county within the state wherein there is a school population of 5,000 or more shall constitute a county school district of the first class; that upon the creation of that district the county commissioners shall designate the name by which such district shall be known, and shall divide each district into five representative precincts. Comp. Laws 1907, section 1891x22, provides that upon the appointment or election and qualification of a board of education for any county school district of the first class the trustees of all school districts formerly existing in such county shall convey and deliver all of the school property in such districts to the board of education of such county school district of the first class, and that such county school district shall succeed to all rights, property, incomes, etc., of said former school districts in such county, and that in its name it may sue to enforce any rights of said former districts and be sued in any court of law, or equity. That section also further provides, "All outstanding debts and obligations of any such school district shall be paid by said board of education," referring to the outstanding debts and obligations of the former school districts within the county. It is contended on the part of the plaintiff that under these statutory provisions, the property of the former Central school district No. 5 having been conveyed to Millard County school district, defendant herein is liable for all debts legally contracted by the said Central school district No. 5, prior to its absorption by the said Millard County school district on July 1, 1915. There would seem to be no question as to that contention. The statute referred to expressly provides for the conveyance to and the taking over by the Millard County school district of all property of the Central school district No. 5, and authorizes it to sue and enforce any right of said Central school district No. 5

in respect to any property formerly belonging to such district. In addition, it is expressly provided in said section 1891x22 that the county school districts of the first class shall pay all outstanding obligations of the country school districts, which, in this case, under the provisions of the section, makes the Millard County school district, defendant herein, obligated, as successor to the Central school district, to pay the legal debts of said Central school district.

It appears from an audit of the books of the Central school district No. 5 that on July 1, 1913, said Central school district No. 5 had in its treasury approximately $6,000 brought forward from preceding years; that during that fiscal year the school board was authorized by vote of the qualified electors to and did issue bonds in the sum of $11,500, all of which was to be used in the erection of a school building; that during that fiscal year something in excess of $3,000 was received by the school district from a tax levy made by the trustees upon the property of the district. Some other amounts were received by the district as its portion of the county and the state school funds, but, as the amounts received from those two funds could be used only for paying teachers, they are not material to this decision. Anyway, it appears that the amounts received from the two funds, namely, the county fund and the state fund, were ample during that fiscal year to pay the teachers' salaries. From all other sources, including the said $6,000, $11,500 received from the sale of bonds, and the taxes on the property of the district of $3,264.17, and certain miscellaneous items of $99.60, the total revenue for that year, exclusive of the fund for the payment of teachers' salaries, was $20,863.77. It further appears that the cost of the school building constructed by the district was something in excess of $37,000, being more than $22,000 in excess of any fund that it is contended by appellant could legally be applied in payment of its construction. It also appears that the funds of the district, except the teachers' salary fund, were kept in one account, and as the building progressed during the summer and fall of 1913 warrants were issued payable to the contractor and others furnishing labor and material, and

140        SUPREME COURT OF UTAH        [March

Utah Ass'n of C. M. v. Bd. of Ed., of Millard Co., etc., 54 Utah 135.

that on the 25th day of November of that year warrants were issued exceeding the total revenue of the district for that fiscal year in excess of $9,000. It is not questioned, and we think it is affirmatively admitted, that had the school board not applied or taken any moneys levied and collected under the provisions of the statute for the current expenses and applied the same in payment of the construction of the building, there would have been ample money to pay plaintiff's assignors and others furnishing supplies during that school year.

The taxes levied by the school trustees on the property within the school district was under the authority of Comp. Laws 1907, section 1815, as amended by chapter 44, Laws Utah 1909. That section, so far as material, provides that the school district board shall have general charge, direction, management, etc., of the schools of the district, and the care, custody, and control of its property. It further provides that said board "may annually order to be raised on the taxable property of the district, not to exceed one per cent. for the support of schools, to defray current expenses and to purchase textbooks." There are some other provisions defining the powers of the board to establish and maintain school libraries, but those provisions are immaterial here. By Comp. Laws 1907, section 1871, it is provided that a special school tax may be levied in a sum not to exceed two per cent. of all the taxable property of the district regularly authorized by a meeting of the qualified electors of the district "to raise funds to purchase a school site or improve the same, or to purchase, build, rent, repair, or furnish schoolhouses or redeem outstanding bonds, or for the payment of teachers' salaries or for current expenses." By the provisions of section 1882 et seq., county school districts, when authorized by a vote of the qualified electors, could issue school bonds for the purpose of building and furnishing schoolhouses, to purchase ground on which to locate the same, or to fund or refund any outstanding indebtedness.

It is apparent from the foregoing provisions that the power given to the trustees of the county school districts to levy a tax not exceeding one per cent., as provided in section 1815,

supra, as amended, was for the purpose of paying the current expenses and the purchase of text-books during a particular fiscal year. While it is true that the phrase "for the support of schools" is used, that phrase must be construed in connection with the other provisions of that section and the provisions of the succeeding sections mentioned. That conclusion is supported by the provisions of section 1871, where the trustees can, when authorized by a vote of the qualified electors, levy a tax not to exceed two per cent. of the taxable property of the district and by the further provisions of section 1882 et seq., providing, when authorized by a vote of the qualified electors, for the creation of a bonded indebtedness for the purpose of constructing schoolhouses and other purposes mentioned; the evident intent and purpose of the several statutes mentioned being that the trustees of a district such as the Central school district could, without any action on the part of the electors, levy a one per cent. tax to pay current expenses, but could not, without authority of the voters, impose any additional burden or taxes upon the property of the district for the purposes of purchasing school sites, building school houses, or any other purpose, except the ordinary running expenses connected with the schools under their control.

It is not contended by appellant that, if the indebtedness contracted were in excess of the revenues of the Central school district No. 5 for those years, it could be enforced. It is, however, insisted by appellant that the taxes levied and collected by that district for those years, under the authority of said section 1815, as amended, were ample and sufficient for the payment of the obligations stated in the complaint; further, that the only reason why defendant is unable to pay the indebtedness due the plaintiff is that the trustees of the Central school district No. 5 unlawfully applied the funds received from taxation to carry on and pay the usual expenses of conducting the school, and applied a part of such taxes to pay contracts for the erection of a school building. Appellant insists that such application was contrary to the purposes for which such taxes had been levied and collected, and that

the fact of such illegal application of the funds collected for conducting and paying the current expenses of the school could not and does not constitute any defense to plaintiff's claims.

It is true that persons dealing with a municipal corporation, as stated by the Supreme Court of Oklahoma in *Buxton & Skinner Stat. Co.* v. *Board of Com'rs*, 53 Okl. 70, 155 Pac. 217—

"are bound to take notice of the constitutional limitation and to ascertain as to what extent the revenues have been appropriated to existing liability; but they are not bound to anticipate, and no amount of prudence or foresight could enable them to foresee, that illegal claims would be incurred by officers willing to violate the Constitution. In our judgment, the sole question herein is whether the indebtedness was valid at the time it was incurred. In determining the validity of such indebtedness, it will, of course, always be necessary to inquire whether, at the date of its assumption, there were unappropriated revenues to meet it, because, if there were not, there would be no liability resting upon the county, and the claimant would not be entitled to judgment. But if, at the time the contract was made, the indebtedness created thereby together with all previous valid indebtedness, did not exceed the income and revenue of the county provided for such year, the claimant will be entitled to judgment for the amount of his claim." —citing cases.

See, also, *Van Dolsen* v. *Board of Education of the City of New York*, 162 N. Y. 446, 56 N. E. 990.

The defense which the school board, defendant in this action, is making, and which the members of such board doubtless in good faith deem it their duty to make in an effort to legally discharge their duties, is one manifestly without any moral support, and can only be justified by the limitation imposed by the constitutional inhibition against creating indebtedness in excess of the revenues of each year. It was the duty of the school district No. 5 to apply the funds raised through the tax levy to the purposes for which they were authorized to make such levy. The application of such funds to other purposes, however commendable, cannot defeat the claims of parties who had contracted with the board in the belief that the funds raised by the tax levy would be applied to the purposes for which they had been collected

and would not be applied to other purposes of the school district.

We therefore conclude that the court erred in not giving plaintiff judgment for the full amount of its claims.

The respondent has filed cross-assignments of error attacking the judgment in favor of appellant. It will be observed that the court entered judgment in favor of appellant for only a part of its claims, and the purpose of its appeal is to reverse the judgment upon the ground that it is for an amount less than appellant is entitled to under the facts and the law applicable thereto. By the cross-assignments respondent assails the judgment upon the ground that no judgment should have been entered in favor of appellant at all. Respondent cannot thus assail the judgment by mere cross-assignments of error. If respondent desired to assail the judgment as a whole, it should have appealed from the judgment and made cross-assignments of error on its cross-appeal. The principle involved here is discussed and decided adversely to respondent's contentions in the case of *McCornick & Co.* v. *National Copper Bank,* 49 Utah, 296, 163 Pac. 1097, and *Big Cottonwood Tanner Ditch Co.* v. *Shurtliff,* 49 Utah, 569, 164 Pac. 856.

It follows from the foregoing that the judgment must be reversed, and the cause remanded to the district court, with directions to modify its findings of fact and conclusions of law in accordance with the views herein expressed, to set aside and vacate the present judgment, and enter judgment in favor of plaintiff for the full amount of its claims. Such is the order; appellant to recover costs.

CORFMAN, C. J., and FRICK, WEBER, and THURMAN, JJ., concur.