# Rankin *against* Porter.

Wherever confidence is reposed, the law forbids that it shall be abused: hence, he who has offered his advice and assistance to another in the sale of land will not be permitted to avail himself of the purchase of it, if obtained upon a misrepresentation of its value; and if purchased and conveyed under such circumstances, the vendor may recover it in ejectment, upon tendering the repayment of the purchase money.

ERROR to the common pleas of *Mercer* county.

Sarah H. Porter against William S. Rankin. The case is fully stated in the opinion of the court.

*Sullivan,* for plaintiff in error.

*Pearson,* for defendant in error, cited, *Paley on Ag.* 10, 11, 12, 32; 1 *Story's Eq.* 311; 9 *Pick.* 212, 223; 1 *Johns. Cha.* 350; 1 *Serg. & Rawle* 327.

The opinion of the Court was delivered by

HUSTON, J.—This was an ejectment by Mrs Porter to recover military lot No. 72 in fourth donation district, containing five hun-

[Rankin v. Porter.]

dred acres; and the case presented the following facts. The lot was the property of General Andrew Porter, who, by his will dated in 1806, devised it to George B. Porter, who was the husband of the plaintiff below and who devised it to her by his will dated the 29th of March 1830.

The defendant below showed a deed from Mrs Porter for this tract for the consideration of 1500 dollars. This deed was dated the 4th of February 1836, and it was admitted the price was paid. This suit was brought to rescind the contract, as obtained by the misrepresentations of a person who had solicited and obtained confidence from the owner who lived in Lancaster city.

The plaintiff below gave in evidence several letters from William S. Rankin to G. B. Porter, commencing in 1826 and the last in December 1832; by which it appeared that Rankin had paid taxes for this tract, and once redeemed it when sold. That he had been to see it, and made inquiries of others as to its value; offered more than once to become agent to sell; said it might if divided bring 250 or 300 dollars, and urging General Porter to fix a price; he had repaid to Rankin all advances, but never fixed a price or authorized a sale.

General Porter died, and his family removed from Detroit to Lancaster; and on September 12, 1835 Mr Rankin wrote to Mrs Porter:

"Madam—I have been told you are desirous of selling your donation tract of land of five hundred acres in this county. If such be the fact please inform me of your lowest price and terms of payment, and I will endeavour to effect a sale. My services, if you think proper to accept of them, shall be gratuitous: your late husband having been my personal warm friend, I shall feel gratified to return acts of kindness to his survivor. Please drop me a line on the receipt of this.          Very respectfully yours, &c.

"WILLIAM S. RANKIN."

Mrs Porter's son wrote an answer, but it was not produced. On the 9th of November 1835 Mr Rankin replied to this letter of the son, and acknowledged the receipt of his letter: he says, "As you wish me to sell your lands in this county, in a few days I will go and look at them:" states that he intends to go to West Point to see a son there; and will stop on his way, "and give all the information I can respecting the lands you own here." He then gives a statement of the taxes; and concludes, "I will also endeavour to find out what you can sell for, and if the terms please, I will do any thing and every thing to serve you in the business." On the 10th of December 1835 he went to Lancaster and entered into articles of agreement for the purchase, and it was completed by payment of the money and execution and delivery of the deed on the 4th of February 1836.

The plaintiff below also proved that before Rankin wrote his first letter to her on the 12th of September 1835, a person had called on Rankin, supposing him agent, and offered 1750 dollars for this tract; and that Rankin told him the land could not be sold until the youngest child was of age. It was also proved that in December

[Rankin v. Porter.]

1835, and before he got his deed, Rankin was offered 2250 dollars for the tract, and again 2800, and 8 dollars per acre for two hundred acres part of the tract; but he said he would rather give twenty per cent for money than sell for 8 dollars per acre; asked 10 or 12 dollars per acre.

Another witness proved that, immediately after returning from Lancaster, he said he had bought the Porter tract and made a good speculation; that he had given 1800 dollars for it, and could get 8 dollars per acre and perhaps 12 dollars for it. It was also proved by Judge Dale of Lancaster and Dr Humes, that when the judge came to her house to take the acknowledgement of the deed, Mrs Porter asked the judge (who had at one time lived west of Alleghany river) if she was not selling it too low; that Mr Porter had always spoken of it as valuable. The judge replied he did not know the land and could give no opinion. Rankin then said, " If I would take advantage of the widow and children of my late friend Governor Porter, I would consider myself the meanest man that ever came over the Alleghany mountain. The price I am giving is the highest that can be got for it: if it was worth more he would give it; and if she could get more he would give it up."

He was applied to and refused to give it up. The purchase money and interest were tendered before suit brought and a request to reconvey.

On the part of the defendant below, several witnesses were examined, who stated they thought the price given, viz. 3 dollars per acre, was a fair price in December 1835. That a bill for extending the state canal, which passed in the winter of 1835—1836, raised the price of lands very much.

The president recapitulated all these facts, and told the jury it was their province to decide on the truth of the testimony; and then said, "Was the defendant acting with respect to this land in the capacity of an agent; had he the confidence of Governor Porter and of his widow after his decease ? If he had the care of the land, and was acting as agent, he would be bound to communicate to his principal his knowledge of the land, the offers made, and its situation and value; if he neglected to do so, or misrepresented the value, this would render any contract made by him for the purchase of the land for which he had been agent void, and the deed executed and delivered in pursuance of such contract would in a court of equity be cancelled ; and in our courts the grantor in the deed can recover the possession in an action of ejectment."

There is nothing in this opinion of which the defendant below has cause to complain. The law is so often and so firmly settled that a person appointed to sell cannot be the buyer so as to gain by his purchase, that it would be a waste of time to cite authorities ; but the cause was argued here as if this rule applied only to those clothed with a fiduciary character by law, as executors, guardians, or by formal instruments, as deeds or powers of attorney legally executed.

[Rankin v. Porter.]

The ground of the decision is, that wherever confidence has been reposed, justice forbids that it shall be abused; and it applies as strongly to those who have gratuitously or officiously undertaken the management of another's property, as to those who are retained or appointed for that purpose and paid for it. The man who offers his services to a distant owner, who promises to examine the property and ascertain the price which can be obtained for it, and especially if he professes to do this from friendship, must not expect to gain by imposing on the confidence he has excited. *See Paley on Agency* 10, 11, 12, 35; *Livermore* 418; *Forrester* 111; 1 *Johns. Ch.* 350, 394; 8 *Ves.* 348; 9 *Ves.* 294, &c. &c.; and see the general principle, that he who professes and agrees to act as a friend, shall not abuse the confidence reposed in him to his own gain, in Sheriff *v.* Neal, 6 *Watts.*

    Judgment affirmed.