Wright v. Smith.

---

WRIGHT *vs.* SMITH.

1. A trustee, so far as the trust extends, can never be a purchaser of the property embraced under the trust, without the consent of all persons interested.

2. The rule extends to all cases in which confidence has been reposed, and applies as strongly to those who have gratuitously or officiously undertaken the management of another's property, as to those who are engaged for that purpose and paid for it.

3. The amount for which the mortgage, against which relief is sought in this case, and which was fraudulently procured, should stand as security, determined; and decree that upon payment thereof the mortgage and bond secured by it be given up to be canceled.

---

This cause was heard by the Vice-Chancellor, upon the pleadings and proofs.

Wright v. Smith.

*Mr. Coult* and *Mr. Van Blarcom,* for complainant.

*Mr. Hamilton* and *Mr. Kays,* for defendant.

THE VICE-CHANCELLOR.

The bill in this cause prays relief against a mortgage, on the ground that it was fraudulently procured. The complainant, Benjamin H. Wright, is a resident of Rome, in the state of New York, and the defendant, James Smith, of Newton, in this state. Wright, being the owner of a certain interest in some mineral lands in the county of Sussex, and desirous of purchasing the fee of the lands, (the same being about forty acres belonging to one Ackerson,) and wishing also to buy an adjoining tract called the Howell farm, made known his wishes in 1869 to the defendant, who was acquainted with the premises, and had done business with the complainant some years before. Wright had received in some way exaggerated impressions of the prices that would be asked by the owners, but was anxious to buy, and told Smith about what sums he would be willing, if necessary, to pay. These sums were not to exceed $4000 for the Ackerson land, and $7500 for the Howell farm. Smith undertook, as a friend, to negotiate for their purchase, and from that time till in the spring of 1870, was more or less in treaty with the two owners, keeping also in communication with the complainant, receiving from and sending letters to him about the terms and progress of the bargains. Smith, it was thought, could buy to better advantage than Wright, and the latter was, therefore, not to be known to the owners, but was to take title to the properties through Smith.

On the 25th of August, 1869, Smith wrote to the complainant that he would endeavor to make the arrangement for him with Ackerson, if possible, in as short time as he could, and would let him know how the whole matter stood as far as lay in his power. On the 16th of the following October, he wrote that he thought he could get both the Ackerson and Howell matters arranged to suit Wright, but it

would have to be done in a peculiar manner; and requesting the complainant to say how he should like to have it arranged, but not to mention it to any one, and to let him hear from him at once. On the 8th of April, 1870, he wrote that he had succeeded in buying of Ackerson; that other parties were negotiating for the property, but he had bought it and got it safe; requesting Wright to send him his check for $500 at once, and have $500 more on the 5th of the next May, when he would make a deed to Wright, and the balance of $3000 in bond and mortgage on the property. He said nothing in this letter, or in any other, as to what he had agreed to pay Ackerson. On the 13th of the same month he wrote acknowledging the receipt of $600, in answer to his letter, for the Ackerson property, and saying that he had not yet succeeded in arranging for the Howell farm, but should use all his skill in bringing about the purchase. On the 2d of May, Ackerson executed a conveyance of his premises to Smith, expressing as the consideration the sum of $4000, and on the 5th of the same month Wright paid to Smith $400 more to make up the $1000 named in his letter of the 8th of April.

Smith continued to write about the Howell farm, acknowledging in a letter of May 17th, the receipt of $750, which Wright sent to be used in that purchase, and saying in one of July 11th: "I have just received my deed for the Howell property; got it this afternoon; all is safe now; thought best to let you know at once; you can complete your arrangements, as the property has changed hands; the obstacles are removed." He had before received for this purchase $500 from Wright, and on the 6th of August following $750, making in all $2000 on account of that property. The deed for it from Howell to Smith expressed the consideration of $7000. Some delay occurred in effecting the transfer from Smith to Wright, but the latter took possession shortly after the former got title, and Smith and wife subsequently conveyed both properties to Wright by one conveyance, for the consideration of $11,000, being the amount of the sums

named in the two deeds from Ackerson and Howell. This sum of $11,000 was paid to Smith by Wright, as follows: $3000 in previous cash payments, as already stated; $2000 by assuming a mortgage of that amount on the Howell farm, and the balance, of $6000, by bond and mortgage to Smith, payable in installments of $2000 each, the first to be due May 5th, 1871.

Wright had not seen or in any way communicated with either Howell or Ackerson, but relied upon Smith to make the best terms he could, both as to prices and cash payments, and believed that he had done so, and that he had paid the sums named in the deeds, till in May, 1871, when he learned from Howell that instead of $7000 for his farm, Smith had paid him but the value of $5500, and none of it in cash. This led him to Ackerson, from whom he learned that instead of $4000 for his land, Smith had paid him but $1178, one-half of it in cash and the other half by a note payable in one year and eleven months. The consideration of $5500 was made up by executing a mortgage on the premises for $2000, and by conveying two lots in Newton which Smith had been seeking to sell. These lots he claims to have been worth $4500 over and above their encumbrance, but it is proved that the lots were taken by Howell, through his agents, for $3500, and it is further proved that the latter sum was a large price. The result of the whole is this: Smith received from Wright, in cash, $3000, and paid out in cash $589. He bought both properties for $6678, and passed them over to Wright for $11,000.

The object of the bill is to bring Smith to account, and to have the mortgage adjusted to what shall be found due. It calls for an answer without oath. The answer, though under oath, must therefore be treated as if it were not. But if it were evidence, its allegations so far as they deny the material matters of the bill would not be of the slightest avail. The evidence that Smith acted in a fiduciary capacity in making the purchases is superabundant and overwhelming. His letters, of which seventeen were produced, establish it beyond

doubt. They carefully avoid any statements of what he was to pay, and are evidently drawn with studied care, evincing a purpose to make Wright believe he was buying for him as advantageously as he could, without saying so in terms. He received letters from Wright in large numbers, which upon the hearing he declined to produce, though requested and duly notified to do so. Their contents, as otherwise proved, are of the strongest character possible to show the relation of confidence existing between the parties. The whole conduct of Smith in originally proffering his services as a friend when informed by Wright of his wishes; imposing reticence on Ackerson and on Wright; causing fictitious considerations to be inserted in the deeds which he took; the fact that no arrangement or bargain was made, or is pretended to have been made, between Smith and Wright as to the price between them; and the manifest assumption on Wright's part that he was giving what Smith gave—an assumption which Smith knew Wright was acting on as certainly as he knew it to be false; are all in keeping with the letters and other facts of the case. It is true that the complainant was aware that in dealing with Howell, Smith was to turn in the two Newton lots, and was willing it should be done, but they were to be appraised at a just and reasonable price. He trusted implicitly in the defendant, because he had previously known him and done business with him while filling an honorable official position. But one view, I think, can be taken of this case. It is an instance of singular confidence on the one side and flagrant abuse of it on the other.

It is admitted in the answer that the complainant made known his wishes and plans to the defendant, and told him how far he would be ready to go as to prices, but it is denied that the defendant agreed to act as agent or to buy the premises in trust. He says he may have told the complainant, and he thinks he did, that he could buy for less money than complainant could, but he did not agree to act for him or incur any responsibility on his account; that the complainant was a stranger, of whose pecuniary means he had no assur-

Wright *v.* Smith.

ance, and that he looked upon him as a sort of adventurer of doubtful responsibility; that as he had named the prices he was willing to pay, the defendant had made up his mind to ascertain from the owners what the lands could be obtained for, and concluded (if he could purchase them at prices which in his opinion it would do to hold them, and could turn in, in exchange, the town lots he held,) to obtain the same, and take his chances of selling to the complainant, and of getting payment enough to justify him in letting him into possession.

It is plain, from the answer itself, that the parties were not dealing at arm's length. But without holding that the answer alone shows the defendant to have been incapacitated from buying at all, except in trust for complainant, it is sufficient that whatever the answer alleges at variance with the gist of the bill, is thoroughly refuted by the defendant's letters, by his conduct, and by the testimony in the cause. From the evidence generally, as well as from his letters, he clearly appears to have understood that the true particulars of the transaction would not bear the light. His apparent mistake was in supposing it at all more defensible on legal grounds than on moral. That he was not formally constituted an agent, with authority to bind the complainant, or that his agreement to act for him was not formally made, are points which, if true, are of no sort of importance. Nor is it important that no agreement was made to compensate him for his services. It is sufficient that he accepted and held a situation of trust in reference to procuring the lands. Every man has a trust to whom a business is committed by another. Every man is a trustee whose office is to advise or to operate, not for himself, but for others. The principle is general that a trustee, so far as the trust extends, can never be a purchaser of the property embraced under the trust without the consent of all the persons interested. The rule extends to all cases in which confidence has been reposed, and applies as strongly to those who have gratuitously or officiously undertaken the management of another's property, as to those who are

engaged for that purpose, and paid for it. *Rankin* v. *Porter*, 7 *Watts* 387, 390; *Fox* v. *Mackreth*, 1 *Lead. Cas. in Eq.* 92; *Keech* v. *Sandford*, *Ibid.* 36.

It is superfluous to cite authorities for these familiar and salutary doctrines. They stand on the plainest dictates of conscience, and are essential to the maintenance of honorable business and of society among men. The transaction in this case is one not to be endured. It must be regarded as fraudulent, and be decreed to be reformed.

The complainant, before bringing his suit, made a tender to defendant of $2000, in satisfaction of the mortgage. This amount was in considerable excess of what was thought to be due upon an accurate accounting, but the excess was volunteered to meet any claims for commissions or services. This tender was refused. The complainant now proffers in his bill to pay defendant all moneys expended by him in the purchase of the lands, and all interest accrued, together with a reasonable compensation (if it should be deemed equitable and just that he should be paid anything) for his services in making such purchases. In view of all the facts of the case, the defendant is entitled, in my judgment, to no allowance for commissions or services. The advantages he derived from a sale of his lands at a large price, and for cash, he has already secured. These he can keep, but no others can be properly allowed. The net value of the lots conveyed by him to Howell, over and above the encumbrance, must be allowed at $3500. To this must be added the $1178 which he paid, or is bound for, to Ackerson, together with his actual disbursements for conveyances, or other expenses for work done or materials furnished in the business. Interest to be also allowed upon the several items from their dates. He is to be charged with the sum of $3000, paid him at different times by the complainant on account of the purchases, with interest from the delivery of the deed of conveyance from the defendant to Howell. The resulting balance will be the true amount due the defendant on complainant's mortgage. Upon pay-

ment of this balance the mortgage and bond secured by it should be given up to be canceled.

In accordance with the above, I respectfully advise a decree, with costs to be taxed.