## SARAH McNUTT v. ROSCOE D. DIX.

*Principal and agent—Sale—Purchase by agent.*

Plaintiff, a resident of the State of Ohio, as one of the heirs of her mother, of whose estate defendant was administrator, was the owner of an undivided one-fifth interest in 80 acres of land, which she agreed to sell for $450 to another heir upon the

advice of defendant, who negotiated the sale, and to whom plaintiff forwarded a deed in which the consideration was fixed at $450 and the name of the grantee left in bank. The proposed purchaser failing to complete the purchase at once, the defendant, without the knowledge of his wife, inserted her name in the deed as grantee, and forwarded to the plaintiff the $450. A few days afterwards the defendant sold the interest conveyed by said deed to the same proposed purchaser for $600, and the plaintiff brought this suit to recover the $150 received in excess of the $450 remitted to her, claiming that defendant was acting as her agent in the entire transaction, and that the money received on the sale belonged to her; in which contention she is sustained by the Court.

Error to Berrien. (O'Hara, J.) Argued October 29, 1890. Decided November 21, 1890.

*Assumpsit.* Defendant brings error. Affirmed. The facts are stated in the opinion.

*Spafford Tryon* and *George S. Clapp,* for appellant.

*Theo. G. Beaver (Marshall L. Howell,* of counsel), for plaintiff.

CAHILL, J. The plaintiff, as the daughter and one of the heirs at law of Margaret Hastings, deceased, owned an undivided one-fifth interest in 80 acres of land in Berrien county, in this State. She resided at Fredericktown, Ohio. Her brothers and sisters resided in this State. One of her brothers, John Hastings, was proposing to buy the claims of the others interested in the estate, and, with that purpose in view, had bought one share, being one-fifth, for $300, and had contracted for and subsequently concluded a purchase of another share at $450. He had also written to the plaintiff in regard to purchasing her share.

The defendant was the administrator of Margaret Hastings' estate. There were no debts to be paid, and the only thing to be done in the settlement of the estate was

the division of this land and some small amount of personal property between the heirs. On February 24, 1888, the plaintiff and her husband wrote the defendant the following letter:

"FREDERICKTOWN, O., Feb. 24, 1888.
"ROSCOE D. DIX,—

"*Dear Sir:* As you are appointed administrator of estate of Margaret Hastings, deceased, and we being heirs at law, we would like to be informed regarding said estate. What are the prospects of selling the farm? We have understood that John Hastings has bought out one of the heirs, and wants a controlling interest in lieu of forcing the remaining heirs to a sale. Can it be done according to the laws of your State? And we have no recourse but submit to a sacrifice. Please oblige the undersigned,

"BENJAMIN McNUTT and SARAH McNUTT.

\* \* \* \* \* \* \* \* \* \* \* \*

"Since writing the above, I have thought of another item. If John Hastings has his own individual interest set off, can it be done clear of the mortgage now on the farm?

"BENJAMIN and SARAH McNUTT."

To this letter defendant made reply as follows:

"LAW OFFICE OF DIX & WILKINSON.
"ABSTRACTS OF TITLE, REAL ESTATE, LOANS, COLLECTIONS.

"BERRIEN SPRINGS, MICH., Feb. 27, 1888.
"BENJ. McNUTT,
"Fredericktown, O.

"*Dear Sir:* Your favor 24th at hand. In reply to your several inquiries, will say, first, the place cannot be sold for six months. The mortgage on the place now amounts to about $1,400, and draws interest at eight per cent. The expense of administration and sale of place will amount to about $260; funeral expenses, $40; interest on $1,400 for six months, eight per cent., $56; total, $1,756; taxes 1887, $44,—making in all $1,800. The place will sell in the fall for about $4,000, not to exceed $4,200. Deduct $1,800 from $4,200, leaves $2,400. Divide by 5, makes each share $480. Take $1,800 from $4,000, leaves $2,200. Each 1-5 share is worth $440. John has bought 1-5 interest at $300. He will have another share to-morrow at $450,—Mrs. Shearer's,—and I have no doubt

he will give your wife the same, and close it all out. I advised Mrs. Shearer to sell at $450. It closes it all up at once, and otherwise it will run until fall, and then perhaps no one to buy even at $4,000, and in case did not sell would be to the expense of advertising again, and the interest of the mortgage going on all the time, and increasing the claim thereof. I would also advise you to sell at $450. I send deed herewith, and in case you conclude to sell please have Mrs. McNutt sign same, acknowledge, and then send to me, and I will remit you money by draft at once. After signing deed and acknowledging before a justice of the peace or notary public, then send it to your county clerk, and get his certificate attached similar to one I inclose, and return same, or send to me.    *    *    *    *    *    *    *    *    *

                                    " ROSCOE D. DIX."

Upon the receipt of this letter, plaintiff executed the deed, and returned it to the defendant on March 3, 1888. In this deed the name of the grantee was left in blank. On receipt of it, defendant claims that he saw John Hastings at his (defendant's) office, told him that he had received the deed from Mrs. McNutt, and asked him if he would take it and pay the $450. He says this conversation with John Hastings was on the 7th, 8th, or 9th of March, and he thinks that on each of those days he had conversations with him about the deed, and in which he advised him to accept the deed and pay the money, but that on each occasion John said he was unable to do so. On March 7, defendant remitted to plaintiff $450, which was the consideration named in the deed, and on March 9 he wrote his wife's name in the deed as grantee, and put the same on record. It is conceded that this was done without any knowledge on the part of defendant's wife, and that she was not in fact the purchaser of the land, but held it for defendant. The defendant had in the meantime purchased the interest of one of the other heirs, so at this time he had one

share, the plaintiff's share stood in the name of defendant's wife, and John Hastings had three shares. On April 2 following, John Hastings purchased of defendant the two shares held by himself and his wife, for $600 each.

This suit is brought to recover the $150 received by defendant from John Hastings over and above the $450 already remitted, upon the theory that defendant, in making such sale, was acting as the agent of the plaintiff, and could not therefore lawfully purchase the same himself in his own name, or in that of his wife; that, in the subsequent sale of the land to John Hastings for $600, he was still acting as the agent of the plaintiff; and that the money received on such sale belongs to the plaintiff.

The defendant claimed that the letter of February 27 was written in good faith, and correctly stated all of the facts within his knowledge at the time concerning the situation of the estate, and the value of the property; that he fully expected that John Hastings would take the plaintiff's interest, and pay for the same as stated; that, when the deed was received by him, he gave John Hastings every opportunity to take the land if he desired it, but that, having refused to do so, he felt himself at liberty to take the land himself at the same price; and that, as the plaintiff received all the money she expected to receive for her interest, she had no right to complain.

There is some force in the position taken by defendant, under the particular circumstances of this case; but there are certain legal principles which stand in the way of his being permitted to keep the money received by him on the sale of this property, if he had undertaken to act for the plaintiff as her agent in making this sale. The law is very strict in scrutinizing the conduct of those

who are acting in a fiduciary relation. In *Moore v. Mandlebaum*, 8 Mich. 442, this Court, in speaking of one who had assumed to act as the agent of another, said:

"In that confidential relation he was bound to the utmost degree of good faith, and had no right, while professing to act in that capacity, to make himself the agent of other parties for the purchase of the lands he was authorized by the plaintiff to sell, nor to take any advantage of the confidence his position inspired to obtain the title himself. Nor could he make a valid purchase from his principal while that confidential relation existed without fully and fairly disclosing to his principal all the propositions he had received, and all the facts and circumstances within his knowledge, in any way calculated to enable his principal to judge of the propriety of such sale."

In *People v. Board*, 11 Mich. 225, it was said:

"So careful is the law in guarding against the abuse of fiduciary relations that it will not permit an agent to act for himself and his principal in the same transaction, as to buy of himself, as agent, the property of his principal, or the like."

Applying these principles to the case at bar, is it not clear that by his letter of February 27 the defendant undertook to act as the agent of the plaintiff in negotiating the sale of her interest in the property to her brother John? In receiving the deed sent to him with the name of the grantee left blank, the defendant would have no authority to insert the name of the grantee, except upon the theory that he was the plaintiff's agent, and had authority from her for that purpose. Under such circumstances, the law says that defendant had no right to insert his own name, or, what would be the same thing in this case, that of his wife, as purchaser of this land. Nor does it avail the defendant that in this particular case he was acting in good faith, and in the honest belief that he had a right to do what he did do. The wholesome rule of law is one that applies to all transactions

of this character, and courts will not stop to inquire as to the motive or intent of parties in particular cases, where it appears that the rule has been violated. Under the circumstances of this case, the money received by defendant·from John Hastings, less the amount already paid by him to plaintiff, must be held to have been received for the plaintiff's use, and was rightly recovered under the declaration for money had and received.

The circuit judge instructed the jury in accordance with this view, and the judgment must be affirmed, with costs.

The other Justices concurred..