This decision was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Please also note that this electronic decision may contain computer-generated errors or other deviations from the official paper version filed by the Supreme Court and does not include the filing date.

# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                    **NO. 31,929**

**JACOB P. CHAVEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**James A. Hall, District Judge**

Liane E. Kerr, LLC
Liane E. Kerr
Albuquerque, NM

for Appellant

Gary K. King, Attorney General
Francine Ann Baca-Chavez, Assistant Attorney General
Santa Fe, NM

for Appellee

## DECISION

**BOSSON, Justice.**

This is a capital appeal stemming from a shooting that occurred early in the

morning of June 16, 2007. Finding no merit to Defendant Jacob Chavez's claims of error, we uphold the convictions.

**BACKGROUND**

When the bars closed after a night of drinking in downtown Santa Fe, Max Valdez (Victim) invited people to his home to continue the party. During the party, Defendant, also known as "Kiki," got into an argument with another partygoer named Erik Garcia. Defendant pulled out a gun and began waving it around. Garcia pulled his shirt off to show he was unarmed and wanted to fight Defendant without any weapons. Victim and others tried to intervene and calm Defendant down to no avail. Garcia was able to sneak out the back door, leaving his car in front of Victim's house. A little while later, Defendant left the party with Michael Martinez, among others.

By four o'clock in the morning, most of the partygoers had left. Kyle Clark, Janelle Sawyer, Austin Martinez, and Tim Herrera remained in Victim's living room while Victim had already gone to bed. Suddenly, two men burst into Victim's living room with guns. Clark was shot immediately in the mouth and then blacked out. The same gunman that shot Clark then turned the gun on Austin Martinez and pulled the trigger, but the gun jammed. Austin Martinez then fled the house, breaking his

leg in the process. Herrera also fled.

Both gunmen then went down a hallway toward Victim's bedroom, with the shooter leading the way. Another shot rang out from Victim's bedroom. Victim's body was found on the floor next to his bed and a forensic pathologist later determined that he died of a gunshot wound to the head.

Meanwhile, Austin Martinez, not able to get very far on a broken leg, moved a few houses down the road and hid in a pine tree until police arrived. Herrera, from a defensive position behind his truck, watched the gunmen leave. Herrera then got into his vehicle, picked up Sawyer on her way out of the house, and drove off.

Sometime after the gunmen left the house, Clark awoke to find himself alone and bleeding in Victim's living room. Clark then dragged himself to his vehicle and drove off looking for help. On the way to the hospital, Clark managed to get the attention of a sheriff's officer who stopped to help. Clark was able to tell officers where the shooting occurred and an investigation ensued.

Ultimately, Defendant was arrested in connection with the shootings, along with Michael Martinez and Anthony Gracen Gutierrez. After a jury trial, Defendant was convicted of first-degree murder, attempted first-degree murder, aggravated assault with a deadly weapon, conspiracy, and aggravated burglary. This is a direct

appeal stemming from those convictions pursuant to Article VI, Section 2 of the New Mexico Constitution. Defendant raises various issues, each of which will be addressed in turn.

**DISCUSSION**

**Sufficiency of the Evidence**

Defendant first argues that the evidence was insufficient to sustain a conviction of guilt beyond a reasonable doubt. It appears that on appeal Defendant is arguing that there was insufficient evidence of identity to find guilt beyond a reasonable doubt. At trial, Defendant argued that Gutierrez was the shooter, and that Defendant's wife drove Michael Martinez and Gutierrez back to Victim's house while Defendant was passed out in the back seat of the vehicle. The State's theory of the case was that the two gunmen who entered Victim's house were Defendant and Michael Martinez, with Defendant being the actual shooter, while Gutierrez drove the getaway vehicle.

When reviewing a sufficiency of the evidence claim, we must determine "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt." *State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988) "We view the evidence in the light most

4

favorable to supporting the verdict and resolve all conflicts and indulge all permissible inferences in favor of upholding the verdict." *State v. Apodaca*, 118 N.M. 762, 766, 887 P.2d 756, 760 (1994).

In support of his argument, Defendant correctly points out that there is no physical evidence, such as DNA or fingerprints, tying him to the crime scene and the murder weapon was never found. In addition, Defendant claims that discrepancies in identification during the investigation raise reasonable doubt as to the identity of the shooter.

Most of the eyewitnesses did change their story at some point during the investigation. For instance, throughout the initial questioning and the initial photo lineup, Austin Martinez, the victim with the broken leg, did not identify Defendant as the shooter or even acknowledge being present during the shootings. But at trial, Austin Martinez explained that initially he was uncooperative because the police had immediately placed him in handcuffs, which he resented, and he felt his rights had been taken away. In addition, Austin Martinez at one point called the investigating officer to tell him that he had made a mistake and that Gutierrez was actually the shooter, but by the time he left the subsequent interview Austin Martinez continued to identify Defendant as the shooter. Austin Martinez testified that he saw a picture

5

of Gutierrez and he looked familiar, so he wanted to be sure he identified the right shooter and that by the time he saw the photo lineup again, he was sure it was Defendant.

Herrera also failed to identify Defendant initially. Herrera actually identified Gutierrez as the shooter. It was not until eight months after the shooting that Herrera identified Defendant. Again, however, Herrera testified that he always knew that Defendant was the shooter, but he did not identify him because they had grown up together, and Defendant knew where he lived which made him scared.

Clark, the man shot in the mouth, initially identified both Defendant and Michael Martinez as being at the party before the shooting. However, when later asked who actually shot him, Clark identified Michael Martinez as the first one through the door and the shooter.

Despite these differences and inconsistencies during the investigation, at trial each of these witnesses identified Defendant as being involved in the shootings. Both Herrera and Austin Martinez identified Defendant as the actual shooter. Clark stated that Defendant was one of two gunmen who entered the house that morning, although he was not sure which one actually fired the shots.

Additional evidence also tied Defendant to the crime. Cell phone records

indicated that Defendant's cell phone was in the area of Victim's house around the time of the shooting. In addition, Brandon Wagner, a former cell mate of Defendant, testified that Defendant had confessed to the shootings while the two men shared a jail cell.

This evidence, though contradicted by other, exculpatory evidence, and certainly subject to challenge on cross-examination, is sufficient for the jury to conclude beyond a reasonable doubt that Defendant committed the crimes charged beyond a reasonable doubt.

**Jury Instruction on Anthony Gracen Gutierrez Conviction**

Defense counsel revealed to the jury during opening statement that Anthony Gracen Gutierrez had already been convicted of Victim's murder. The State objected and asked for an instruction to the jury that Gutierrez had been convicted as an accessory. Ultimately, the court read to the jury the following instruction:

> Anthony Gracen Gutierrez was convicted by a jury of [m]urder and [c]onspiracy to [c]ommit [m]urder related to the death of Max Valdez. At that trial, the jury was instructed that Mr. Gutierrez may be convicted of [m]urder if he actually committed the crime. In addition, the jury was instructed that Mr. Gutierrez may also be convicted of [m]urder even though he himself did not do the acts constituting the crime if he intended that the crime be committed, the crime was committed, and he helped, encouraged or caused the crime to be committed. Under the law, this is known as being convicted as an accessory to the crime. In finding Mr. Gutierrez guilty of [m]urder, the

jury was not required to and did not make a specific finding as to whether Mr. Gutierrez actually committed the [m]urder or was an accessory to the [m]urder.

Defendant now complains that it was error to instruct the jury on Gutierrez's conviction and that, instead, a copy of the judgment and sentence should have been admitted into evidence or, in the alternative, that instructing this jury on Gutierrez's aiding and abetting was error because the jury made no specific finding on aiding and abetting. We review Defendant's claimed error for an abuse of discretion. *See Gonzales v. Surgidev Corp.*, 120 N.M. 133, 144, 899 P.2d 576, 587 (1995) (holding that the trial court abused its discretion by taking judicial notice of a page from legal opinion).

The difficulty with both of Defendant's arguments is the same as the difficulty created by defense counsel when the fact of Gutierrez's conviction was introduced at all; namely, misleading the jury into believing that the State was trying to convict two people inappropriately for the same crime. Because the jury in the Gutierrez trial did not make a specific finding on aiding and abetting, the judgment and sentence makes no mention of aiding and abetting. Thus, merely introducing the judgment and sentence into evidence would not have alleviated the possibility of jury confusion. On the other hand, if the court failed to instruct the jury at all, the

8

potential harm would not have been corrected.

The instruction given was neutral. It merely explained how the jury was instructed in the Gutierrez case. It did not favor principal or accessory liability. It was made necessary by Defendant's own actions, when his trial counsel mentioned Gutierrez's conviction to the jury. On balance, we conclude that the instruction given was appropriate under the circumstances and within the discretion of the trial court.

**Photographic Identifications**

Defendant also argues that it was error to admit into evidence the pre-trial photographic identifications of Defendant because, according to Defendant, these identifications were the result of impermissible suggestive conduct by law enforcement. "In reviewing the admissibility of an out-of-court photographic identification, we determine whether the procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification and whether, under the totality of the circumstances, the identification was still reliable." *State v. Jacobs*, 2000-NMSC-026, ¶ 30, 129 N.M. 448, 10 P.3d 127.

In support, Defendant points to various discrepancies in the identifications.

These discrepancies include the assertion that, when first shown the photographic arrays, not one of the three witnesses identified Defendant as the shooter. In addition, two of the witnesses may have discussed the case together and looked at photographs on the internet. However, regarding the identifications made by Clark and Austin Martinez, Defendant failed to identify any actions by the investigating officers that could be deemed "impermissibly suggestive." *Id.* The fact that Clark and Austin Martinez spoke about the case prior to trial, and that Austin Martinez did not identify Defendant when first shown the photographs but, instead, identified him later that night, goes to the weight of the identifications not their admissibility. *See State v. Stampley*, 1999-NMSC-027, ¶ 34, 127 N.M. 426, 982 P.2d 477 (noting that certain issues regarding identification go toward the weight given, which must be decided by the jury); *see also State v. Wills*, 697 N.E.2d 1072, 1075 (Ohio Ct. App. 1997) ("If the pretrial procedures were not suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility . . . ."). As noted in the trial court's ruling, Defendant was free to dispute the accuracy of these identifications and the credibility of the persons making those identifications at trial, which he did.

The allegations regarding Herrera's identification give us more pause.

10

Defendant alleges that during a particular interview, one of the investigating officers said to Herrera, "If you want to get along with the police, you need to identify [Defendant]. And if you do that, then the pressure's off." (Internal quotation marks omitted.) Yet Defendant cites no evidence in the record that this statement was actually made, neither the testimony of Herrera nor a transcript of the police interview. The citation given is to defense counsel's argument during the suppression hearing. "Argument of counsel is not evidence." *Wall v. Pate*, 104 N.M. 1, 3, 715 P.2d 449, 451 (1986).

Assuming, arguendo, that the above statement was actually made to Herrera, the fact remains that Herrera was not persuaded to identify Defendant during that interview or even shortly thereafter. During trial, Detective Vasquez freely admitted that he used "a more aggressive approach" during that interview. Detective Vasquez explained that he "knew [Herrera] had information he was withholding, and the prior tactics [he used] weren't working" to get Herrera to reveal that information. According to Detective Vasquez, during the use of this more aggressive approach "it was, again, pretty obvious that, at that time, [Herrera] was withholding information." However, this did not seem to have any effect on Herrera, as he did not identify Defendant until some eight months later.

We find no evidence that any of the identification techniques used by the investigating officers were impermissibly suggestive as a matter of law. Accordingly, we find no error in the admission of the identifications.

**Testimony of Brandon Wagner**

Defendant also complains that it was error to admit the testimony of Brandon Wagner, a former cell mate of Defendant, who testified that Defendant had confessed to the shootings while they were sharing a cell together. Defendant argues that this testimony was inherently unreliable and should have been excluded. Specifically, Defendant argues that inconsistencies in Wagner's testimony, the deal he made with the prosecutor in return for his testimony, and the fact that Wagner had access to Defendant's discovery when they shared a cell together, all made Wagner's testimony inherently unreliable. "We review the admission of evidence for an abuse of discretion." *State v. Branch*, 2010-NMSC-042, ¶ 9, 148 N.M. 601, 241 P.3d 602.

All of the specific complaints regarding Wagner's testimony go toward the credibility of the testimony, not the admissibility of the testimony. *See State v. Brown*, 100 N.M. 726, 729, 676 P.2d 253, 256 (1984) ("Matters affecting witness's bias or motive to testify falsely are to be attacked through cross-examination, rather than the exclusion of the witness."); *Rice v. First Nat. Bank in Albuquerque*, 50

N.M. 99, 103, 171 P.2d 318, 321 (1946) ("Inconsistencies only affect the credibility of the witness or reduce the weight of his testimony and it was for the trier of fact to weigh the evidence and determine his credibility." (Internal quotation marks and citations omitted.)). Defendant was free to cross-examine Wagner regarding the inconsistencies in his testimony and his motive for testifying, and he did so. Accordingly, we find no abuse of discretion in the admission of this testimony.

**Right to Call Witnesses to Rebut Allegations of Confidential Informant**

Defendant argues that he was denied due process when he was not permitted to call witnesses to rebut the allegations made by a confidential informant. However, Defendant's Brief-in-Chief fails to explain what these allegations were or the significance of this confidential informant. As best can be discerned from this poorly developed argument, Defendant appears to be claiming that he should have been allowed to call witnesses to rebut the allegations of the confidential informant, even though the informant was excluded from testifying at trial. Again, Defendant fails to proffer proper legal support and, finding no merit to the argument, we hold that Defendant was not denied due process.

**CONCLUSION**

We affirm Defendant's convictions in their entirety.

**IT IS SO ORDERED.**

_____
**RICHARD C. BOSSON, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PATRICIO M. SERNA, Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

14